[L. A. No. 19092.   In Bank.   Nov. 28, 1944.]

M. (MANASSE) STEPHEN LIBARIAN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

M. Stephen Libarian, in pro. per., for Petitioner.

Jerold E. Weil for Respondent.

THE COURT.—This proceeding was brought to review an order of the Board of Governors of The State Bar recommending that petitioner, M. (Manasse) Stephen Libarian, be suspended from the practice of the law in this state for a period of one year.   In reaching its conclusion the board adopted the findings of the local administrative committee but rejected that committee's recommendation of disbarment.

The charges against petitioner arose from his persistence in advertising.   In July, 1941, a public reprimand was administered to him after he had given a "solemn promise" to stop advertising, but in 1942 continued investigation revealed more flagrant acts and further charges were filed which resulted in the imposition of a three-month period of suspension

(*Libarian* v. *State Bar*, 21 Cal.2d 862 [136 P.2d 321]). The present proceeding was commenced in February, 1944. As ground for review petitioner asserts that the findings are not supported by the evidence and in any event are contrary to the weight of the evidence. An examination of the record shows that this assertion is unfounded. The findings are responsive to the charges made by an amended order to show cause, many material facts are admitted, and the challenged findings and conclusions have substantial evidentiary support.

Since July, 1943, petitioner has maintained a law office in his home at LaBrea Avenue and West Adams Boulevard, Los Angeles. On the west side of the building he erected a sign 17 x 17½ inches reading, "M. STEPHEN LIBARIAN LAWYER," and in front he erected a signpost with signs thereon reading respectively: 1. "INCOME TAX EXPERT" (size 34" x 10") ; 2. "NOTARY" (size 34" x 6½") ; and 3. "OPEN 8 A.M.—9 P.M." (size 19" x 5"). Another sign read: "FREE PARKING FOR M. STEPHEN LIBARIAN CLIENTS WHILE VISITING."

■ The three signs on the signpost, the Board of Governors found, were "advertising signs." Petitioner argues that they were not erected to procure legal business but merely to identify him and indicate, as any lawyer might, the three lines of work, law, income tax, and notary, while the parking sign was erected merely for the convenience of clients. He refers to alleged conversations and correspondence with officials of The State Bar relative to signs of permissible size and character, and claims that the signs erected were tacitly, if not expressly, within approved specifications. But this entire argument is presented upon matters which are not admitted by The State Bar, and which do not appear in the record. The evidence of record sufficiently supports the board's classification of the signs as advertising signs.

In January, 1944, in the name of "Libarian Tax Service, by Stephen Libarian, Director," petitioner mailed approximately 5,800 postal cards, giving his address and office hours, calling attention to the last day for filing of the federal income tax return, suggesting the data necessary for preparing a return, and stating: "We'll appreciate it very much if you kindly come over before February 15, 1944. If you cannot come, your return could be prepared in your absence. . . . We have a staff of competent assistants. We guarantee the

payments of the penalty and interest, should we fail to deliver your Return before the 15th day of March, 1944.''

A large portion of these cards, the board found, was mailed to persons with whom petitioner was unacquainted otherwise then having previously done notarial work for them at his home and office, in the course of which he made it a practice to record the name and address of the caller. With others he was entirely unacquainted. In response to the sending out of the cards and because of the signs posted, the board further found, petitioner had a great many persons call upon him for the purpose of having their tax returns made out, and petitioner was thus able to ''build up a lucrative tax practice whereupon he no longer remained interested in the straight practice of the law nor in the rules governing the professional conduct of lawyers.''

Petitioner admits the mailing of the cards, about 4,800 of which bore the salutation ''Dear Client:'', and were sent, he states, to former clients, persons being classed as such by petitioner regardless of whether they came for notarial work, income tax work, or legal work. The remaining cards, about 1,000, bore the salutation ''Dear Friend:'', and with few exceptions, were sent to Armenians and Syrians who were former clients, friends, or acquaintances. With respect to this group, petitioner testified: ''These dear friends of mine, almost all of them I know in person; if I don't know about a hundred of them, I know of them, I saw them someplace, and most of them are my clients.'' The reference on the postals to a ''staff of competent assistants,'' petitioner states, meant his wife, who is a notary; himself, and from four to ten secretaries, or girls. By the fictitious name ''Libarian Tax Service,'' for which no fictitious name certificate had been filed as required by law, petitioner referred to the partnership of his wife and himself. The postals, he asserts, were sent out mainly in answer to questions, to give information rather than to advertise, and they related only to income tax work.

Notwithstanding these protestations the board found that by the maintenance of the signs and mailing of the postcards, petitioner ''intended to and did solicit employment as an attorney at law,'' in violation of rule 2 of the Rules of Professional Conduct. This finding and conclusion may reasonably be drawn from the record.

The board also concluded that in carrying out a course of conduct interdicted by this court in *Libarian* v. *State Bar, supra,* and in wilfully disobeying and violating the order therein to refrain from the solicitation of employment and advertising contrary to the Rules of Professional Conduct, petitioner violated section 6103 of article 6 of the State Bar Act; also that his acts and conduct violated his oath and duty as an attorney and constituted the commission of acts involving moral turpitude within the meaning of section 6106 of that act. The conduct of petitioner throughout the hearing, it was commented, made manifest to the committee that inasmuch as he had profited and materially advanced his financial position by erecting signs and sending out notices, the methods were not so important; also, his attitude indicated an utter disregard for the canons of ethics governing the subject of solicitation.

Although petitioner denies that he committed any act of moral turpitude or wilful disobedience, or that he ever intended to advertise himself as either an attorney or an income tax expert, or to otherwise violate the Rules of Professional Conduct, the denial cannot stand in the face of his admission that he read the opinion in *Libarian* v. *State Bar, supra,* at least once. The standard of conduct there demanded of him, regardless of whether at the moment he might be acting as notary, income tax expert, or lawyer, is set forth in terms too direct to be susceptible of misunderstanding. "If the petitioner should choose to continue as a practitioner at the bar of this state," this court said at page 865, "he must comply with the standards of the legal profession. He should appreciate that when he is licensed to practice as an attorney at law, the professional services that he thus performs are performed by him as an attorney, whether or not some of the services could also be rendered by one licensed in a different profession. One who is licensed to practice as an attorney in this state must conform to the professional standards in whatever capacity he may be acting in a particular matter. (*Jacobs* v. *State Bar,* 219 Cal. 59 [25 P.2d 401].) As a practicing attorney, he may not solicit employment nor may he advertise contrary to the rules. The restrictions, limitations, and permissible conduct in those respects are familiar both to the lawyer and to the layman. They are published in the Code of Ethics and Rules promulgated by The State Bar, and they

do not require reiteration here." (See, also, *Mayer* v. *State Bar*, 2 Cal.2d 71 [39 P.2d 206].)

It is ordered that the petitioner, M. (Manasse) Stephen Libarian, be and he is hereby suspended from the practice of the law in this state for a period of one year, commencing thirty days after the date of the filing of this opinion.