[Civ. No. 15997. First Dist., Div. One. Mar. 2, 1954.]

ALICE A. POWER, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Henry G. Sanford and Thomas M. Mulvihill for Petitioner.

Everett A. Corten, T. Groezinger, Dion R. Holm, City Attorney (San Francisco), and Jerome Cohen, Deputy City Attorney, for Respondents.

WOOD (Fred B.), J.—■■■ This is a proceeding to review a decision of the Industrial Accident Commission rendered after reconsideration. The decision adopted and affirmed the findings and order that had been made and filed, prior to reconsideration, by the referee who conducted the original hearing; a finding that the death of the employee was not proximately caused by an injury arising out of and occurring in the course of employment, nor while doing anything incidental thereto; an order that the applicant (widow of the deceased employee; the petitioner herein) is not entitled to any benefits under the state workmen's compensation, insurance and safety laws.

Upon reconsideration, a hearing was held before a different referee. He made a report in which he summarized the testi-

mony adduced before him and authorized the parties to submit their views in writing, which they did. Later, he filed a further report in which he recommended findings of fact that the injury arose out of and occurred in the course of employment and proximately caused death. From that he drew and recommended the legal conclusion that the applicant was entitled to an award.

When considering the case and making its final decision, the commission had before it (in addition to the complete record of the first hearing) both reports of the second referee, the written statements of the parties, and the documentary evidence adduced before the second referee. It did not have a verbatim record of the testimonial evidence introduced at the second hearing. (That testimony had not been transcribed.)

Petitioner claims that the commission in rejecting the second referee's findings and recommendations without reviewing the testimonial evidence which he considered and weighed, violated her right to due process. She invokes section 5315 of the Labor Code, which declares that the commission may confirm, adopt, modify or set aside the findings, order, decision or award of a referee and may, with or without further proceedings, and with or without notice, enter its order, findings, decision or award "based upon the record in the case."* and cites judicial decisions upon this issue.

In one of those decisions, *National Auto & Cas. Ins. Co.* v. *Industrial Acc. Com.* (1949), 34 Cal.2d 20 [206 P.2d 841], the Supreme Court held that "the commission may make a factual determination contrary to that of a referee although the testimony is conflicting and it did not itself hear the

---

*Until September 22, 1951, section 5315 and its predecessor statute (§ 59 of Stats. 1917, ch. 586, pp. 831, 870-871) declared that in such a case the commissioners' action be "based in whole or in part upon the report of the referee or upon the record in the case." The 1951 amendment deleted the words "in whole or in part upon the report of the referee or." (Stats. 1951, ch. 778, pp. 2266, 2267.) The 1953 amendment made no change in that regard. (Stats. 1953, ch. 1256, p. 2814, effective September 9, 1953.) The decision here under review was dated September 18, and filed September 21, 1953.

The 1951 amendment, obviously, was not of such a character as to remove the statutory requirement for a review of the record (in the types of cases to which it applied), nor did it lessen the legislative emphasis upon the desirability of and need for that requirement.

Consequently, those judicial decisions, rendered prior to the effective date of the 1951 amendment, which annulled commission decisions for failure to review the record when rejecting a referee's recommendations, continue in full force and effect insofar as the provisions of section 5315 are concerned.

testimony or observe the witnesses, but did examine the evidence and record.'' (P. 28.) In discussing the problem the court quoted the pertinent code sections and reviewed the case law, including one case which holds that if the commissioners make a determination contrary to the recommendations of a referee who heard the evidence or read the record they are required to make an independent examination of the record. (Pp. 28-30 of 34 Cal.2d.)

There are at least two cases in which decisions were annulled for failure of the commission to review the record: *Bethlehem Steel Co.* v. *Industrial Acc. Com.* (1940), 42 Cal. App.2d 192 [108 P.2d 698], adoption of the recommendations of a second and different referee (increasing the award) without a reading by him of the testimony adduced at the first hearing; *Deter* v. *Industrial Acc. Com.* (1941), 45 Cal. App.2d 664 [116 P.2d 112], adoption of the recommendations of a referee who had neither heard nor read the evidence adduced at the first hearing nor all of the evidence adduced upon rehearing.

The respondent commission claims that this requirement is not applicable in this case because it reviewed the second referee's summary of the testimony adduced before him (as well as the rest of the record mentioned) and that under the circumstances of the case an examination of a verbatim transcript of that testimony was not necessary; that such review gave the commission a comprehension of the evidentiary facts.

The commission directs attention to the fact that the only witnesses who testified at the second hearing were persons who had already testified at the first hearing. It claims that the referee's summary shows that the testimony of those witnesses was substantially the same on each occasion, save for the single exception noted below. The commission invokes *Santa Maria Gas Co.* v. *Industrial Acc. Com.* (1941), 46 Cal.App.2d 775 [117 P.2d 43]. In the Santa Maria case an award was made based upon a disability rating of 35¾ per cent. Subsequently, three additional hearings were held. Later, the employer petitioned to terminate liability. Following a hearing thereon the commission found that the disability was 76 per cent and amended the original award upward upon the basis of this increased percentage. The employer challenged the amended award upon the ground that the commission made the increase without competent

evidence in addition to that which it had before making the original award. The reviewing court found and held that "the record herein indicates that it is not true that all of the conditions known to exist as a basis for the last permanent rating were known to exist and were rated in the previous awards. In view of the medical reports submitted after such awards were made it cannot be said that there was no new evidence sufficient to warrant the commission in re-opening and amending its previous decision and award under the continuing jurisdiction vested in the commission by section 5803 of the Labor Code." (P. 777.) The employer petitioned for a rehearing. In denying that petition the court filed an opinion in which it discussed a contention that "the matter was disposed of by the commission after a final hearing held before a referee who had not conducted the former hearings and without the record of the evidence adduced at the former hearings having been transcribed for consideration by the commission." (P. 778.) In overruling that contention, the court distinguished the Deter case, *supra,* and said: "In the case at bar the action of the commission about which petitioner complains is the increase of the percentage of disability to 76. This action was based, as the record reveals, upon the evidence produced at the final hearing and an examination of the evidence adduced at the former hearings was, *under the circumstances,* unnecessary in the determination of such question. The evidence produced at the final hearing was sufficient, as a matter of law, to support the action of the board in fixing the rate of disability at 76%." (Pp. 778-779 of 46 Cal.App.2d; emphasis added.)

The circumstances of the Santa Maria case are not necessarily the circumstances of our case. The question here is not the percentage of disability. It is the question whether or not the injury was so connected with the employment as to be compensable. The injury occurred after regular business hours. The employee had a key to the office but there was a conflict of evidence on the question whether he worked after hours and no direct evidence concerning his activities at the office on the night in question, whether at work or not.

*At the second hearing,* a letter from Mr. Bryant, head of the department in which the decedent was employed, was put in evidence. In that letter Mr. Bryant stated that he did not know that the deceased employee had a key to the office; that he had not given the employee permission to

remain in the office after 5 p. m.; and that the employee's supervisor said he had never assigned any duties to be performed by the employee after 5 p. m.

Petitioner testified concerning a conversation she had with Mr. Bryant after the accident. The referee summarized this testimony as follows: "She talked to Mr. Bryant and in his conversation he told her that he had known her husband for a number of years; that he was a conscientious worker and that on occasions he would work evenings; that he would do so on bills required for collection. She was asked again to recapitulate the conversation and she did so; the next occasion, stating that he often worked overtime. On cross-examination, she observed that the conversation took place two, three or four days next after the date of death. She stated that Mr. Bryant did not observe whether her husband had worked overtime. In fact, she said that he did not use the term." This testimony was given at the second hearing, not at the first.

The commission says in its answer that the second referee's report demonstrates that, with the sole exception of the petitioner's testimony concerning her conversation with Mr. Bryant, the testimony of the witnesses at the second hearing was "substantially and materially identical with that contained in the transcript of their testimony taken at the first hearing." (Answer to Pet., p. 18.) The commission concludes therefrom: "It is thus apparent that a transcript of the testimony received at the rehearing could contribute nothing more to the commission's comprehension of the evidence than does the existing record." (*Idem,* p. 18.)

That statement, presumably made before the testimony given at the second hearing had been transcribed,* minimizes the importance of the exception, the conversation between petitioner and Mr. Bryant, which significantly bore upon the principal issue in the case.

However, we need not and do not decide whether the commission could have made its decision without examining a verbatim record of the testimony given at the second hearing if the summary of petitioner's testimony had been accurate.

That summary is inaccurate in an important respect. It says that, *upon cross-examination,* the witness *"stated that Mr. Bryant did not observe whether her husband had worked*

---

*The answer was written and filed by the commission before the writ herein was issued; several weeks before the return to the writ was filed.

*overtime.  In fact, she said that he did not use the term.''*
(Emphasis added.)

Thus, the summary unequivocally tells the reader that upon cross-examination petitioner flatly contradicted and in effect withdrew the testimony which she has just given upon this pivotal issue.  But, in fact, she did no such thing, as the verbatim transcript of her testimony clearly demonstrates. The questions put to her, and her answers, upon cross-examination, were these:  ''Q.  Did he [Mr. Bryant] tell you *when* Mr. Power worked overtime?  A.  Oh, no, he didn't say. Q.  Did he tell you that Mr. Power was working overtime *on the night that he passed away?*  A.  No, he didn't say.'' (Emphasis added.)  That, obviously, was not a statement that Mr. Bryant ''did not observe whether'' her husband had worked overtime, nor a statement that Mr. Bryant ''did not use the term'' overtime.  The summary in this respect is so grossly inaccurate as to be false and misleading.  Doubtless it was an inadvertent inaccuracy upon the part of the referee.  It did not mislead him, for he apparently gave full credit to this witness when making his determination, probably relying upon his memory of the words as they came from her lips upon the witness stand.  Yet, the summary is misleading to any reader who did not hear the testimony. The commission's examination of such a summary is no substitute for the reading and appraisal of the very words of the witness as recorded in the reporter's verbatim transcript. We need not examine the summary further to ascertain if it contains other inaccuracies; nor need we consider other points of error assigned by the petitioner.

The decision is annulled with directions to conduct further proceedings not inconsistent with the views herein expressed.

Peters, P. J., and Bray, J., concurred.